**CASE DESIGNATION**

G-4801-CI-0202301217-000

TO: **Bernie Quilter, Clerk of Courts**

CASE NO. _____

JUDGE _____

Judge Lindsay D. Navarre

**The following type of case is being filed:**

**Professional Malpractice**
- [ ] Legal Malpractice (L)
- [ ] Medical Malpractice (M)

- [ ] **Product Liability** (B)
- [ ] **Other Tort** (C)

**Workers' Compensation**
- [ ] State Funded (D)
- [ ] Self Insured (K)

- [ ] **Administrative Appeal** (F)

- [ ] **Commercial Docket**

By submitting the complaint, with the signature of the Attorney, the Attorney affirms that the name of person with settlement authority and his/her direct phone number will be provided upon request to a party or counsel in this matter

**Other Civil**
- [ ] Consumer Fraud (N)
- [ ] Forfeiture
- [ ] Appropriation (P)
- [ ] Court Ordered
- [x] Other Civil (H)
- [ ] Certificate of Title
- [ ] Copyright Infringement (W)

This case was previously dismissed pursuant to CIVIL RULE 41 and is to be assigned to Judge _____, the original Judge at the time of dismissal. The previously filed case number was CI_____.

This case is a civil forfeiture case related to a criminal case currently pending on the docket of Judge _____. The pending case number is_____.

This case is a Declaratory Judgment case with a personal injury or related case currently pending. The pending case number is_____, assigned to Judge _____.

This case is to be reviewed for consolidation in accordance with Local Rule 5.02 as a companion or related case. This designation sheet will be sent by the Clerk of Courts to the newly assigned Judge for review with the Judge who has the companion or related case with the lowest case number. The Judge who would receive the consolidated case may accept or deny consolidation of the case. Both Judges will sign this designation sheet to indicate the action taken. If the Judge with the lowest case number agrees to accept, the reassignment of the case by the Administration Judge shall be processed. If there is a disagreement between the Judges regarding consolidation, the matter may be referred to the Administrative Judge.

Related/companion case number_____ Assigned Judge_____

_____     _____
Approve/Deny          Date       Approve/Deny          Date

**Attorney**      Andrew W. Miller | Joseph K. Cole
**Address**       Brouse McDowell, LPA
                  300 Madison Avenue, Suite 1000, Toledo, OH 43604
**Telephone**     419-931-6925 | 419-931-6929

EFILED LUCAS COUNTY
1/18/2023 9:56 AM
COMMON PLEAS COURT
BERNIE QUILTER, CLERK
ENV#: 53740

COURT OF COMMON PLEAS
LUCAS COUNTY, OHIO

| | |
|---|---|
| Frederick Thomas<br>1410 Arrowhead Drive<br>Maumee, OH 43537,<br><br>       Plaintiff,<br><br>       v.<br><br>Spinnaker Insurance Company<br>c/o Corporation Services Company<br>3366 Riverside Dr., Suite 103<br>Upper Arlington, OH 43221,<br><br>       and<br><br>Hippo Analytics, Inc. d/b/a<br>Hippo Insurance Services<br>c/o Corporation Services Company<br>3366 Riverside Drive, Suite 103<br>Upper Arlington, OH 43221,<br><br>       Defendants. | Case No.  G-4801-CI-0202301217-000<br><br>     Judge Lindsay D. Navarre<br>Hon.<br><br>**COMPLAINT**<br><br>**JURY DEMAND ENDORSED HEREON**<br><br>Andrew W. Miller (0082353)<br>Email: amiller@brouse.com<br>Joseph K. Cole (0086429)<br>Email: jcole@brouse.com<br>Brouse McDowell LPA<br>300 Madison Avenue, Suite 1000<br>Toledo, Ohio 43604<br>T: (419) 931-6925<br>F: (419) 931-6925<br><br>Jason J. Liss (0101702)<br>Email: jliss@fabiansklar.com<br>Aaron J. Herskovic<br>(pro hac vice motion to be filed)<br>Email: aherskovic@fabiansklar.com<br>Fabian Sklar King & Liss, P.C.<br>33450 W. Twelve Mile Road<br>Farmington Hills, MI 48331<br>T: (248) 553-2000<br>F: (248) 553-2020<br><br>Attorneys for Plaintiff |

Now comes Plaintiff Frederick Thomas ("Thomas") and for his complaint against Defendants Spinnaker Insurance Company ("Spinnaker") and Hippo Analytics, Inc. d/b/a Hippo Insurance Services ("Hippo"), alleges as follows:

### Nature of Action

1.    This is a civil action that arises from a dispute between Thomas and Spinnaker and / or Hippo regarding Spinnaker's and / or Hippo's obligations to pay, under the terms of a homeowners policy they issued to Thomas, for Thomas's claims arising out of the loss of his home and personal property in a fire.

### Jurisdiction, and Venue

2.    Thomas is an individual who resided at 442 Danberry Street, Toledo, Ohio ("the Property") until his home was consumed by fire. Thomas currently resides at 1410 Arrowhead Drive in Maumee, Lucas County, Ohio.

3.    Spinnaker is a foreign corporation which, upon information and belief, is organized under the laws of New Jersey and has its principal place of business in Chicago, Illinois.

4.    Hippo is a foreign corporation which, upon information and belief, is organized under the laws of Delaware and has its principal place of business in Santa Clara, California.

5.    This Court has jurisdiction over the subject matter of this action pursuant to Section 2305.01 of the Ohio Revised Code.

6.    This Court has personal jurisdiction over Spinnaker and Hippo pursuant to Sections 2307.382(A)(1) – (A)(3) and (A)(9) of the Ohio Revised Code.

2

7.    Venue in this county is proper pursuant to Rules 3(C)(3) and 3(C)(6) of the Ohio Rules of Civil Procedure.

### The Insurance Policy

8.    At all relevant times, Plaintiff was the named insured or otherwise entitled to insurance benefits pursuant to policy no. ███ Insurance ███, issued by Defendants, which insured Plaintiff's dwelling and personal property located at 442 Danberry Street in Toledo, Ohio against all risks of direct physical loss unless expressly excluded or limited in the policy. (Ex. 1).

### The Loss and Plaintiff's Claim

9.    On or about January 27, 2022, while Defendants' policy was in full force and effect, Plaintiff's insured property was damaged by fire.

10.    Upon discovery, Plaintiff timely notified Defendants of the loss.

11.    Thereafter Plaintiff submitted a claim to Defendants under the Policy for the damage to his home, personal property, and the additional living expenses he incurred as a result of the loss.

12.    Plaintiff cooperated fully with Defendants' investigation of the loss and his claim, including providing all requested documents and sitting for an examination under oath ("EUO").

13.    On or about November 14, 2022, Defendants denied coverage for Plaintiff's claim, alleging that Plaintiff breached the Policy's Concealment or Fraud provision. (Ex. 2).

### First Claim for Relief
### (Breach of Contract)

14.    Plaintiff incorporates by reference the allegations set forth in paragraphs one (1) through thirteen (13) above as if fully set forth herein.

15.    The Policy is a valid and enforceable contract between Plaintiff and Defendants.

16.    Plaintiff timely paid all premiums due and performed all other obligations of the insured under the Policy.

17.    In breach of the parties' contract, Defendants have wrongly alleged that Plaintiff intentionally concealed or misrepresented his actions and whereabouts on the date of loss in violation of the Policy's Concealment or Fraud provision and denied payment of Plaintiff's claim.

18.    Contrary to Defendants' allegations, Plaintiff did not intentionally conceal or misrepresent his actions or whereabout on the date of loss or otherwise violated the Policy's Concealment or Fraud provision.

19.    As a direct and proximate result of Defendants' breach of the parties' insurance contract, Defendants remain indebted to Plaintiff for his insured loss, and for any incidental and consequential damages Plaintiff has incurred or will incur that were in the contemplation of the parties at the time the contract was made, or which are the natural and usual consequences of a breach of a homeowners insurance policy.

20.    The Policy contains an Appraisal clause, which states:

If you and we fail to agree on the amount, cause or extent of the loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser

4

within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount, cause or extent agreed upon will be the amount, cause or extent of the loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount, cause or extent of the loss.

Each party will:

1.  Pay its own appraiser; and

2.  Bear the other expenses of the appraisal and umpire equally.

21.  Pursuant to the terms of the Policy, Plaintiff demands that the amount, cause or extent of the loss be determined by Appraisal.

22.  Plaintiff is entitled to Judgment for the amount of loss as determined by Appraisal, plus all incidental and consequential damages, if any, incurred by Plaintiff that were in the contemplation of the parties at the time the contract was made, or which are the natural and usual consequence of a breach of a homeowners insurance policy.

## Second Claim for Relief
### (Bad Faith)

23.  Plaintiff incorporates by reference the allegations set forth in paragraphs one (1) through twenty-two (22) above as if fully set forth herein.

5

24.    Defendant's had a common law duty to act in good faith in their handling of Plaintiff's claim under the Policy. Specifically, Defendants had a duty to act in good faith when deciding whether or not the Policy provided coverage for the loss.

25.    Defendants failed to exercise good faith in the processing of the Claim, because their denial is not predicated on circumstances that furnish a reasonable justification for their decision.

26.    Defendants acted arbitrarily, capriciously, and in bad faith by their factually unsupported positions that Plaintiff breached the Policy's Concealment or Fraud provision.

27.    Defendant's wrongful and bad faith claims handling and denial of coverage for the Plaintiff's claim has caused Plaintiff to suffer damages in an amount to be proven at trial, in excess of $25,000.00.

WHEREFORE, Plaintiff prays for a judgment on his Complaint as follows:

A.    That a judgment of liability under the Policy be entered for Plaintiff and against Defendants;

B.    That any dispute concerning the amount, cause or extent of the loss be determined by Appraisal as required by the terms of the Policy;

C.    That a judgment be entered for Plaintiff and against Defendants in the amount of the appraisal award;

D.    That the judgment further award direct and indirect compensatory damages and Plaintiff's attorney fees incurred in this action resulting from Defendants' breach of the Policy in an amount to be established at trial, but no less than $25,000.00;

E.    That the judgment further award of all direct and indirect compensatory damages, punitive damages, and Plaintiff's attorney fees as a result of Defendants' bad faith denial of coverage under the Policy in an amount to be established at trial, but no less than $25,000.00;

6

F.  That the judgment further award costs and pre- and post-judgment interest at the maximum statutory or other rate; and

G.  Such other relief as this Court deems proper and just.

Respectfully submitted,

Andrew Miller (0082353)
Email: amiller@brouse.com
Joseph Cole (0086429)
Email: jcole@brouse.com
Brouse McDowell LPA
300 Madison Ave., Suite 1000
Toledo, OH 43604
T: (419) 931.6925
F: (419) 931.6925

Jason J. Liss (0101702)
Email: jliss@fabiansklar.com
Aaron J. Herskovic
(*pro hac vice motion to be filed*)
Email: aherskovic@fabiansklar.com
Fabian Sklar King & Liss, P.C.
33450 W. Twelve Mile Road
Farmington Hills, MI 48331
T: (248) 553-2000
F: (248) 553.2020

*Attorneys for Plaintiff*

7

## Jury Demand

Plaintiff Frederick Thomas hereby demands trial by jury constituted of the maximum of jurors permissible by law on all issues triable at law.

Andrew Miller
Joseph Cole
Jason J. Liss
Aaron Herskovic

*Attorneys for Plaintiff*

8

# CERTIFICATION OF INSURANCE POLICY

I, <u>Steven L. Wilson</u>, hereby declare that the attached reproduction of insurance policy number <u>HOH-5352456-00</u> is a true, correct, and complete copy of the original document.

_____     <u>4.12.22</u>
Signature of Affiant                                  Date of Signature

State of: <u>Texas</u>     County of: <u>Travis</u>

The foregoing instrument was acknowledged before me this <u>12th</u> day of <u>April</u>, 20 <u>22</u> by <u>Steven L. Wilson</u> and:

X  who is personally known to me, or

⌐  who produced the following identification: _____.

_____          [SEAL]
Notary Public

<u>Desire Angelic De Leon</u>
Printed Notary Name

<u>03.04.2024</u>
My Commission Expires

DESIRE ANGELIC DE LEON
Notary Public, State of Texas
Comm. Expires 03-04-2024
Notary ID 132389217



# SPINNAKER INSURANCE COMPANY
### A STOCK INSURANCE COMPANY

**HOME OFFICES**
233 S. Wacker Drive
Suite 5500
Chicago, IL 60606

**ADMINISTRATIVE OFFICES**
1 Pluckemin Way
Suite 102
Bedminster, New Jersey 07921
Telephone No. +(1) 908-897-2241
U.S. Toll-Free 1-888-221-7742

# HOMEOWNERS INSURANCE DECLARATIONS PAGE
### (TO REPORT A CLAIM PLEASE CALL: 1-800-585-0705)

**INSURED:**

Fredrick Thomas

442 Danberry St, Toledo, Ohio 43609

**TYPE:** NEW POLICY

**ADDITIONAL INSURED(S):**

**n/a**

**POLICY INFORMATION:**

Policy #: ███ Insurance ███

Policy Created Date: 04/21/2021

Policy Effective Date*: 04/29/2021 12:01 am

Policy Expiration Date*: 04/29/2022 12:01 am

*Standard time zone at property location

**PROPERTY LOCATION** ("Residence Premises"):

Address: 442 Danberry St, Toledo, Ohio 43609

Policy type:  HO3

Year built:  1919

Square footage:  1136

Construction:  Frame

**COVERAGE & LIMITS:**

HDEC01 (07/2017)

Insurance is provided for the following coverages only when a limit is shown. The limit of liability for this structure (Coverage A – Dwelling) is based on an estimate of the cost to rebuild your home, including an approximate cost for labor and materials in your area, and specific information that you have provided us about your home.

| POLICY COVERAGE: | LIMIT OF LIABILITY |
|---|---|
| (Section I – Property): | |
| Coverage A - Dwelling (your home) | $250,000 |
| Coverage B - Other structures | $50,000 |
| Coverage C - Personal property | $125,000 |
| Coverage D - Loss of use | $75,000 |
| | |
| (Section II – Liability): | |
| Coverage E - Personal liability | $100,000 (each occurrence) |
| Coverage F - Medical payment to others | $1,000 (each person) |

\* If more than one property is insured under this policy, Section I and Section II coverages of each location may not be added together in the event of a loss.

| PROPERTY SUBJECT TO SPECIAL LIMIT: | LIMIT OF LIABILITY |
|---|---|
| Jewelry, Watches and Furs | $2,000 |
| Money | $200 |
| Securities | $200 |
| Silverware, Goldware and Pewterware | $2,000 |
| Firearms | $2,000 |
| Electronic Apparatus in or upon a motor vehicle | $2,000 |
| Home Computers | $8,000 |
| Oriental Rugs | $2,000 ea / $10,000 aggregate |
| Watercraft | $2,000 |

HDEC01 (07/2017)

| **ADDITIONAL COVERAGES INCLUDED:** | **LIMIT OF LIABILITY** |
|---|---|
| Personal Injury (HO082A) | Included |
| Limited Fungi, Other Microbes or Rot | $5,000 |

| **OPTIONAL COVERAGES PURCHASED:** | **LIMIT OF LIABILITY** | **PREMIUM** |
|---|---|---|
| Water Back Up and Sump Discharge or Overflow (HO208) | $5,000 | Included |
| Equipment Breakdown Coverage (HSPH 4.1) | Not Included | $0 |
| Service Line Coverage (SLH 4.1) | Not Included | $0 |
| Actual Cash Value Loss Settlement To Roof Surfacing (HO493) | Included | Included |
| Additional Replacement Cost Protection (HO420) | 25% Of Coverage A | Included |

## DISCOUNTS APPLIED:

Loss Free, Fire Extinguisher, Smoke Alarm, Deadbolt, Paperless, No Mortgage Discount, Early Quote Discount (8 days), Smart Home.

## DEDUCTIBLE:

All-Perils Deductible: $1,500

Wind and Hail Deductible: $2,500

HDEC01 (07/2017)

## COST OF POLICY:

|  |  |
|---|---|
| Policy Premium* | $1243 |
| + Optional Coverage | $0 |
| = Total Policy Premium | $1243 |
| +Policy Fee | $35 |
| + Inspection Fee | $30 |
|  | **$1,308** |

**=TOTAL**

*The additional cost for any additional coverage is contained in the Policy Premium amount.

## FORMS & ENDORSEMENTS:

(Made part of this policy at time of issue)

HDEC01 (07/2017) - Homeowner Insurance Declaration Page

HO915A (10/2014) - Vicious Dogs and Dogs with Prior Bite History Liability Exclusion

HAPP01A (07/2017) - Homeowners Insurance Application

OHH001 (07/2017) - Ohio Amendatory Endorsement

HO003 (09/2014) - Homeowners Policy

HO208 (05/2010) - Water Back Up and Sump Discharge or Overflow

HO313 (06/2010) - Windstorm or Hail Deductible

HO493 (12/2012) - Actual Cash Value Loss Settlement To Roof Surfacing

HO420 (06/2009) - Additional Replacement Cost Protection

HO082A (12/2012) - Personal Injury

HO469OH (05/2018) - Smart Home Rewards

## MORTGAGEE INFORMATION:

HDEC01 (07/2017)

**IMPORTANT INFORMATION:**

It is your responsibility to select and maintain adequate amounts of insurance on your dwelling and personal property. The coverage limits selected by you will be adjusted annually based on estimated changes in rebuilding and replacement costs, but the company does not guarantee that the coverage limits shown in these declarations will be sufficient to rebuild your dwelling or replace any other covered property. Please call us or visit us at www.myhippo.com if you would like to change the coverage limits in your policy.

This declaration supersedes any previous declaration bearing the same policy number for this policy period. This declaration provides only a summary of coverage. All coverage is subject to the terms, conditions, and exclusions of the policy contract.

## THIS POLICY DOES NOT PROVIDE EARTHQUAKE INSURANCE.

## THIS POLICY DOES NOT PROVIDE FLOOD INSURANCE.

**RENEWALS AND INQUIRIES:**

Your Hippo Homeowners policy renews automatically on each anniversary of your inception date. The Homeowners policy renewal Declarations, the most recent version of your Homeowners Policy and anything else we provide to you that states that it is part of our renewal offer, together constitute the terms under which we have renewed your Hippo Homeowners policy.

At Hippo, we take pride in keeping Homeowners insurance simple. Should you have inquiries or complaints regarding your policy, please contact us at 1-800-585-0705 or visit www.myhippo.com

**ALLOWING SOMEONE ELSE TO RECEIVE YOUR NON-PAYMENT NOTICES:**

You can select another person, in addition to yourself, to receive the following notices about your insurance policy: notices of lapse, termination, expiration, nonrenewal, or cancellation of your policy for non-payment of premium. You can remove or replace this person at any time. This person will not be covered under your insurance policy and cannot make any changes to your policy. If you would like to select another person to receive these notices about your insurance policy, call us at 1-800-585-0705.

HDEC01 (07/2017)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## OHIO AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**HOMEOWNERS POLICY (HO003)**

**SECTIONS I AND II – CONDITIONS**, paragraph **D. Cancellation**, item **2.** is replaced by the following:

2.  We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing will be sufficient proof of notice.

    a.  We may cancel at any time by letting you know at least 10 days before the date cancellation takes effect if we cancel because you have not paid the premium.

    b.  We may cancel at any time by letting you know at least 20 days before the date cancellation takes effect if we cancel because:

        (1)  There has been a material misrepresentation of fact related to this insurance; or

        (2)  Evidence of arson exists.

    c.  When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 30 days before the date cancellation takes effect.

    d.  We will also mail a copy of any notice of cancellation to any Additional Insured named in the Declarations.

    e.  When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel if the risk has changed substantially since the policy was issued.

        This can be done by letting you know at least 30 days before the date cancellation takes effect.

All other provisions of this policy apply.

---

**OHH001 (07/2017)**  Includes copyrighted material of Insurance Services Office, with its permission.  **Page 1 of 1**

# HOMEOWNERS POLICY

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy. You agree that the policy has been issued in reliance upon the statements in the Declarations and the application.

## DEFINITIONS

**A.** In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance.

**B.** In addition, certain words and phrases are defined as follows:

1. "Actual cash value" means the amount it would cost to repair or replace covered property, at the time of loss, with material of like kind and quality, less allowance for physical deterioration and depreciation, including obsolescence. "Actual cash value" applies to valuation of covered property regardless of whether that property has sustained partial or total loss.

2. "Aircraft Liability", "Hovercraft Liability", "Motor Vehicle Liability" and "Watercraft Liability", subject to the provisions in **b.** below, mean the following:

   **a.** Liability for "bodily injury" or "property damage" arising out of the:

   (1) Ownership of such vehicle or craft by an "insured";

   (2) Maintenance, occupancy, operation, use, loading or unloading of such vehicle or craft by any person;

   (3) Entrustment of such vehicle or craft by an "insured" to any person;

   (4) Failure to supervise or negligent supervision of any person involving such vehicle or craft by an "insured"; or

   (5) Vicarious liability, whether or not imposed by law, for the actions of a child or minor involving such vehicle or craft.

   **b.** For the purpose of this definition:

   (1) Aircraft means any contrivance used or designed for flight except model or hobby aircraft not used or designed to carry people, cargo, or photographic or sound equipment;

   (2) Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

   (3) Watercraft means a craft principally designed to be propelled on or in water by wind, engine power or electric motor; and

   (4) Motor vehicle means a "motor vehicle" as defined in **11.** below.

3. "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

4. "Building" means a structure with a floor, walls and a roof.

5. "Business" means:

   **a.** A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

   **b.** Any other activity engaged in for money or other compensation, except the following:

   (1) One or more activities, not described in **(2)** through **(4)** below, for which no "insured" receives more than $2,000 in total compensation for the 12 months before the beginning of the policy period;

   (2) Volunteer activities for which no money is received other than payment for expenses incurred to

HO003 (09/2014)        Includes copyrighted material of Insurance Services Office, Inc., with its permission.

perform the activity;

(3) Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

(4) The rendering of home day care services to a relative of an "insured".

6.  "Employee" means an employee of an "insured", or an employee leased to an "insured" by a labor leasing firm under an agreement between an "insured" and the labor leasing firm, whose duties are other than those performed by a "residence employee".

7.  "Fuel System" means:

a.  One or more container, tanks or vessels which have a total combined fuel storage capacity of 100 or more U.S. gallons; and

(1) Are, or were used to hold fuel; and

(2) Are, or were located on any one location.

b.  Any pumping apparatus, which includes the motor, gauge, nozzle, hose or pipes that are, or were, connected to one or more containers, tanks or vessels described in Paragraph a.;

c.  Filler pipes and flues connected to one or more containers, tanks or vessels described in Paragraph a.;

d.  A boiler, furnace or a water heater, the fuel for which is stored in a container, tank or vessel described in Paragraph a.;

e.  Fittings and pipes connecting the boiler, furnace or water heater to one or more containers, tanks or vessels described in Paragraph a.; or

f.  A structure that is specifically designed and built to hold escaped or released fuel from one or more containers, tanks or vessels described in Paragraph a.

A "fuel system" does not include any fuel tanks that are permanently affixed to a "motor vehicle" or watercraft owned by an "insured", used for powering the "motor vehicle" or watercraft and not used at any time or in any manner for "business".

8.  "Fungi" means:

a.  any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by "fungi";

b.  Under Section II, this does not include any "fungi" that are, are on, or are contained in, a product or goods intended for consumption.

9.  "Insured" means:

a.  You and residents of your household who are:

(1) Your relatives; or

(2) Other persons under the age of 21 and in your care or the care of a resident of your household who is your relative;

b.  A student enrolled in school full-time, as defined by the school, who was a resident of your household before moving out to attend school, provided the student is under the age of:

(1) 24 and your relative; or

(2) 21 and in your care or the care of a resident of your household who is your relative; or

c.  Under Section II:

(1) With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person described in 9.a. or b. "Insured" does not mean a person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner; or

    **(2)** With respect to a "motor vehicle" to which this policy applies:

        **(a)** Persons while engaged in your employ or that of any person described in **9.a.** or **b.**; or

        **(b)** Other persons using the vehicle on an "insured location" with your consent.

  **d.** Any Additional Insured named in the Declarations, but only with respect to Coverages **A**, **B**, **E** and **F** and only for the "residence premises".

Under both Sections **I** and **II**, when the word an immediately precedes the word "insured", the words an "insured" together mean one or more "insureds".

**10.** "Insured location" means:

  **a.** The "residence premises";

  **b.** The part of other premises, other structures and grounds used by you as a residence; and

    **(1)** Which is shown in the Declarations; or

    **(2)** Which is acquired by you during the policy period for your use as a residence and reported to us within (30) days of its acquisition;

  **c.** Any premises used by you in connection with a premises described in **a.** and **b.** above;

  **d.** Any part of a premises, not used for "business" purposes:

    **(1)** Not owned by an "insured"; and

    **(2)** Where an "insured" is "temporarily residing";

  **e.** Vacant land, not used for "business" purposes, other than farm land, owned by or rented to an "insured";

  **f.** Land owned by or rented to an "insured" on which a one-, two-, three- or four-family dwelling is being built as a residence for an "insured";

  **g.** Individual or family cemetery plots or burial vaults of an "insured";

  **h.** Any part of a premises occasionally rented to an "insured" for other than "business" use;

  **i.** Any premises owned by you and rented to others for use as a residence by not more than three families, if shown in the Declarations as an ADDITIONAL RESIDENCE RENTED TO OTHERS; or

  **j.** Any other structure on the "residence premises" rented to others as a private residence for a limit of liability is shown in the Declarations for STRUCTURES RENTED TO OTHERS.

**11.** "Motor vehicle" means:

  **a.** A motorized land vehicle designed for travel on public roads or subject to motor vehicle registration. A motorized land vehicle in dead storage on an "insured location" is not a motor vehicle;

  **b.** A motorized amphibious vehicle;

  **c.** Any trailer or semitrailer which is being carried on, towed by or hitched for towing by a vehicle described in **a.** above. A boat, camper, or utility trailer not being towed by or carried on a vehicle included in **11.a.** is not a motor vehicle;

  **d.** A motorized golf cart, snowmobile, or other motorized land vehicle owned by an "insured" and designed for recreational use off public roads, while off an "insured location". A motorized golf cart while used for golfing purposes is not a motor vehicle;

  **e.** A motorized bicycle, tricycle or similar type of equipment owned by an "insured" while off an "insured location"; or

  **f.** Any vehicle while being towed by or carried on a vehicle included in **11.a., 11.b., 11.c.** or **11.d.**

**12.** "Occurrence" means an accident, which first happens or first commences during the policy period, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

HO003 (09/2014)     Includes copyrighted material of Insurance Services Office, Inc.,
with its permission.

a. "Bodily injury"; or

b. "Property damage".

13. "Perils Insured Against" means the perils for which coverage is provided.

14. "Property damage" means physical injury to, destruction of tangible property, including the loss of use of tangible property.

15. "Replacement cost" means the amount necessary to repair or replace the damaged property with no deduction for depreciation.

16. "Residence employee" means:

a. An employee of an "insured", or an employee leased to an "insured" by a labor leasing firm, under an agreement between an "insured" and the labor leasing firm, whose duties are related to the maintenance or use of the "residence premises", including household or domestic services; or

b. One who performs similar duties elsewhere not related to the "business" of an "insured".

A "residence employee" does not include a temporary employee who is furnished to an "insured" to substitute for a permanent "residence employee" on leave or to meet seasonal or short-term workload conditions.

17. "Residence premises" means:

a. The one-family dwelling where you reside;

b. The two-, three- or four-family dwelling where you reside in at least one of the family units; or

c. That part of any other "building" where you reside; and

which is shown as the "residence premises" in the Declarations.

"Residence premises" also includes other structures and grounds at that location.

18. "Temporarily Residing" means residence in a hotel, motel, vacation residence or similar facility. It does not include any residence that an "insured" has occupied, rented or leased for 60 days or longer, or that an "insured" intended to occupy for 60 days or longer.

## DEDUCTIBLE

Unless otherwise noted in this policy, the following deductible provision applies:

Subject to the policy limits that apply, we will pay only that part of the total of all loss payable under Section I that exceeds the deductible amount shown in the Declarations.

## SECTION I – PROPERTY COVERAGES

### A. Coverage A – Dwelling

1. We cover:

a. The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and

b. Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises".

2. We do not cover land, including land on which the dwelling is located.

### B. Coverage B – Other Structures

1. We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

2. We do not cover:

a. Land, including land on which the other structures are located;

b. Other structures rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage. However, we do cover other structures rented to others as a private residence for which a limit of liability is shown in the Declarations for STRUCTURES RENTED TO OTHERS;

c. Other structures from which any "business" is conducted; or

d. Other structures used to store "business" property. However, we do cover a structure that contains "business" property solely owned by an "insured" or a tenant of the dwelling, provided that "business" property does not include gaseous or liquid fuel, other than fuel in a permanently installed fuel tank of a vehicle or craft parked or stored in the structure.

3. The limit of liability for this coverage will be shown in the Declarations. Use of this coverage does not reduce the Coverage **A** limit of liability.

## C. Coverage C – Personal Property

1. **Covered Property**

   We cover personal property owned or used by an "insured" while it is anywhere in the world. After a loss and at your request, we will cover personal property owned by:

   a. Others while the property is on the part of the "residence premises" occupied by an "insured"; or

   b. A guest or a "residence employee", while the property is in any residence occupied by an "insured".

2. **Limit For Property At Other Locations a.  Other Residences**

   Our limit of liability for personal property usually located at an "insured's" residence, other than the "residence premises", is 10% of the limit of liability for Coverage **C**, or $1,000, whichever is greater. However, this limitation does not apply to personal property:

   (1) Moved from the "residence premises" because the residence premises is being repaired, renovated or rebuilt and is not fit to live in or store property in; or

   (2) In a newly acquired principal residence for 30 days from the time you begin to move the property there.

3. **Special Limits Of Liability**

   The special limit for each category shown below is the greater of the limit shown below or the special limit for such category, if any, shown in the Declarations. Such limit is the total limit for each loss for all property in that category. These special limits do not increase the Coverage **C** limit of liability.

   a. $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinumware, coins, medals, scrip, stored value cards and smart cards.

   b. $200 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

   This limit includes the cost to research, replace or restore the information from the lost or damaged material.

   c. $2,000 on watercraft of all types, including their trailers, furnishings, equipment and outboard engines or motors.

   d. $2,000 on trailers or semitrailers not used with watercraft of all types.

   e. $2,000 for loss by theft of jewelry, watches, furs, precious and semiprecious stones.

   f. $2,000 for loss by theft of firearms and related equipment.

   g. $2,000 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware, platinumware, platinum-plated ware and pewterware. This includes flatware, hollowware, tea sets, trays and trophies made of or including silver, gold or pewter.

HO003 (09/2014)    Includes copyrighted material of Insurance Services Office, Inc., with its permission.

h. $8,000 on property, on the "residence premises", used primarily for "business" purposes.

i. $2,000 on property, away from the "residence premises", used primarily for "business" purposes.

However, this limit does not apply to loss to electronic apparatus and accessories described in Category **j.** below.

j. $2,000 on electronic apparatus and accessories, while in or upon a "motor vehicle", but only if the apparatus is equipped to be operated by power from the "motor vehicle's" electrical system while still capable of being operated by other power sources. Accessories include tapes, records, discs or other media that can be used with any electronic apparatus as described in Category **j.**

k. $8,000 for home computers, including portable laptop computers and the recording or storage media used with that equipment. There is no coverage for said equipment or media while located away from the "residence premises" except when said equipment or media are removed from the "residence premises" for the purpose of repair, servicing or temporary use.

An insured student's equipment and media are covered while at a residence away from home.

l. $2,000 on any one article and $10,000 in aggregate for Oriental rugs. Oriental rugs are any handwoven silk or wool rug, carpet, tapestry, wall-hanging or other similar article, whose principal value is derived from its color, design, quality of wool or silk, quality of weaving, condition, and age. Oriental rugs include, but are not limited to, Persian (Iranian), Turkish, Caucasian and Turkoman, Chinese and Indian rugs.

m. $2,000 for trading cards, comic books/magazines, autographed memorabilia, or any other memorabilia that has no intrinsic monetary value but derive their value solely from their desirability to collectors.

n. $8,000 for fine art, meaning paintings, etchings, lithographs, pictures, art glass windows, glassware, statuary, marbles, bronzes, antique furniture and silver, porcelains, rare glass and bric-a-brac of rarity, historical value or artistic merit.

**4. Property Not Covered**

We do not cover:

a. Articles separately described and specifically insured, regardless of the limit for which they are insured, in this or other insurance;

b. Animals, birds or fish;

c. "Motor vehicles".

  (1) This includes:

    (a) Their accessories, equipment and parts; or

    (b) Electronic apparatus and accessories designed to be operated solely by power from the electrical system of the "motor vehicle". Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described above.

  The exclusion of property described in **(a)** and **(b)** above applies only while such property is in or upon the "motor vehicle".

  (2) We do cover "Motor vehicles" not required to be registered for use on public roads or property which are:

    (a) Used solely to service a residence; or

    (b) Designed to assist the handicapped;

d. Aircraft, meaning any contrivance used or designed for flight, including any parts whether or not attached to the aircraft.

We do cover model or hobby aircraft not used or designed to carry people or cargo;

e. Hovercraft and parts. Hovercraft means a self-propelled motorized ground effect vehicle and includes,

**Page 6 of 34**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

but is not limited to, flarecraft and air cushion vehicles;

f. Property of roomers, boarders and other tenants, except property of roomers and boarders related to an "insured";

g. Property in an apartment regularly rented or held for rental to others by an "insured", except as provided in **E.10.** Landlord's Furnishings under Section I – Property Coverages;

h. Property rented or held for rental to others off the "residence premises";

i. "Business" data, including such data stored in:

   **(1)** Books of account, drawings or other paper records; or

   **(2)** Computers and related equipment.

   We do cover the cost of blank recording or storage media and of prerecorded computer programs available on the retail market;

j. Credit cards, electronic fund transfer cards or access devices used solely for deposit, withdrawal or transfer of funds except as provided in **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I – Property Coverages; or

k. Water or steam.

l. Business merchandise in storage or held as a sample or for sale or delivery after sale; or

m. Citizens band radios, car phones, radio transceivers, radio transmitters, radar detectors, antennas and other similar equipment. This exclusion does not apply to antennas attached to a covered "building".

## D. Coverage D – Loss Of Use

The limit of liability for Coverage **D** is the total limit for the coverages in **1.** Additional Living Expense, **2.** Fair Rental Value and **3.** Civil Authority Prohibits Use below.

### 1. Additional Living Expense

If a loss covered under Section I makes that part of the "residence premises" where you reside not fit to live in, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living. However, additional living expense due to "fungi", other microbes or rot will not be paid in addition to any amounts paid or payable under Additional Coverage **E.14.** Limited "Fungi", Other Microbes or Rot.

Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

### 2. Fair Rental Value

If a loss covered under Section I makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the fair rental value of such premises less any expenses that do not continue while it is not fit to live in. However, fair rental value due to "fungi", other microbes or rot will not be paid in addition to any amounts paid or payable under Additional Coverage **E.14.** Limited "Fungi", Other Microbes or Rot.

Payment will be for the shortest time required to repair or replace such premises.

### 3. Civil Authority Prohibits Use

If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against, we cover the loss as provided in **1.** Additional Living Expense and **2.** Fair Rental Value above for no more than two weeks. Neighboring premises means a premises in sufficient proximity to the "residence premises" that there exists a reasonable risk that the peril affecting the neighboring premises could endanger either the "residence premises" or the safety of its occupants while in the "residence premises".

### 4. Loss Or Expense Not Covered

We do not cover loss or expense due to cancellation of a lease or agreement. The periods of time under

HO003 (09/2014)          Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**1.** Additional Living Expense, **2.** Fair Rental Value and **3.** Civil Authority Prohibits Use above are not limited by expiration of this policy.

**E. Additional Coverages**

**1. Debris Removal**

   **a.** We will pay your reasonable expense for the removal of:

     **(1)** Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

     **(2)** Ash, dust or particles from a volcanic eruption that has caused direct loss to a "building" or property contained in a "building".

   This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit is available for such expense.

   **b.** We will also pay your reasonable expense, up to $1,000, for the removal from the "residence premises" of:

     **(1)** Your trees felled by the peril of Windstorm or Hail or Weight of Ice, Snow or Sleet; or

     **(2)** A neighbor's trees felled by a Peril Insured Against under Coverage **C;**

   provided the trees:

     **(3)** Damage a covered structure; or

     **(4)** Does not damage a covered structure, but:

       **(a)** Block(s) a driveway on the "residence premises" which prevent(s) a "motor vehicle", that is registered for use on public roads or property, from entering or leaving the "residence premises"; or

       **(b)** Block(s) a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling "building".

   The $1,000 limit is the most we will pay in any one loss, regardless of the number of fallen trees. No more than $500 of this limit will be paid for the removal of any one tree.

   This coverage is additional insurance.

**2. Reasonable Repairs**

   **a.** We will pay the reasonable cost incurred by you for the necessary measures taken solely to protect covered property that is damaged by a Peril Insured Against from further damage.

   **b.** If the measures taken involve repair to other damaged property, we will only pay if that property is covered under this policy and the damage is caused by a Peril Insured Against. This coverage does not:

     **(1)** Increase the limit of liability that applies to the covered property; or

     **(2)** Relieve you of your duties, in case of a loss to covered property, described in **C.4.** under Section I — Conditions.

**3. Trees, Shrubs And Other Plants**

   We cover trees, shrubs, plants or lawns, on the "residence premises", for loss caused by the following Perils Insured Against:

   **a.** Fire or Lightning;

   **b.** Explosion;

   **c.** Riot or Civil Commotion;

   **d.** Aircraft;

e.  Vehicles not owned or operated by a resident of the "residence premises";

f.  Vandalism or Malicious Mischief; or

g.  Theft.

We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants or lawns. No more than $500 of this limit will be paid for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

This coverage is additional insurance.

4.  **Fire Department Service Charge**

We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

This coverage is additional insurance. No deductible applies to this coverage.

5.  **Property Removed**

We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed.

This coverage does not change the limit of liability that applies to the property being removed.

6.  **Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money**

a.  We will pay up to $1,000, or the higher amount, if any, if shown in the Declarations for Credit Card, Electronic Fund Transfer Card or Access Device, Forgery and Counterfeit Money for:

(1)  The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

(2)  Loss resulting from theft or unauthorized use of an electronic fund transfer card or access device used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

(3)  Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

(4)  Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

This coverage is additional insurance. No deductible applies to this coverage.

b.  We do not cover:

(1)  Use of a credit card, electronic fund transfer card or access device:

(a)  By a resident of your household;

(b)  By a person who has been entrusted with either type of card or access device; or

(c)  If an "insured" has not complied with all terms and conditions under which the cards are issued or the devices accessed; or

(2)  Loss arising out of "business" use or dishonesty of an "insured".

c.  If the coverage in **a.** above applies, the following defense provisions also apply:

(1)  We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

(2)  If a suit is brought against an "insured" for liability under **a.(1)** or **(2)** above, we will provide a defense at our expense by counsel of our choice.

(3)  We have the option to defend at our expense an "insured" or an "insured's" bank against any suit

Page 9 of 34

Includes copyrighted material of Insurance Services Office, Inc.,
with its permission.

for the enforcement of payment under **a.(3)** above.

**7. Loss Assessment**

**a.** We will pay up to $1,000 for your share of loss assessment charged during the policy period against you, as owner or tenant of the "residence premises", by a corporation or association of property owners. The assessment must be made as a result of direct loss to property, owned by all members collectively, of the type that would be covered by this policy if owned by you, caused by a Peril Insured Against under Coverage **A,** other than:

**(1)** Earthquake; or

**(2)** Land shock waves or tremors before, during or after a volcanic eruption.

The limit of $1,000 is the most we will pay with respect to any one loss, regardless of the number of assessments. We will only apply one deductible, per unit, to the total amount of any one loss to the property described above, regardless of the number of assessments.

**b.** We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

This coverage is additional insurance.

**8. Collapse**

**a.** With respect to this Additional Coverage:

**(1)** Collapse means an abrupt falling down or caving in of a "building" or any part of a "building" with the result that the "building" or part of the "building" cannot be occupied for its current intended purpose.

**(2)** A "building" or any part of a "building" that is in danger of falling down or caving in is not considered to be in a state of collapse.

**(3)** A part of a "building" that is standing is not considered to be in a state of collapse even if it has separated from another part of the "building".

**(4)** A "building" or any part of a "building" that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**b.** We insure for direct physical loss to covered property involving collapse of a "building" or any part of a "building" if the collapse was caused by one or more of the following:

**(1)** The "Perils Insured Against" named under Coverage **C;**

**(2)** Decay that is hidden from view, unless the presence of such decay is known to an "insured" prior to collapse or there are visible signs of water damage and the "insured" has not taken prompt action to prevent further damage;

**(3)** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an "insured" prior to collapse;

**(4)** Weight of contents, equipment, animals or people;

**(5)** Weight of rain which collects on a roof; or

**(6)** Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

**c.** Loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under b.(2) through (6) above, unless the loss is a direct result of the collapse of a "building" or any part of a "building".

This coverage does not increase the limit of liability that applies to the damaged covered property.

**9. Glass Or Safety Glazing Material**

**Page 10 of 34**

**HO003 (09/2014)**     Includes copyrighted material of Insurance Services Office, Inc., with its permission.

a. We cover:

   **(1)** The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window;

   **(2)** The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window when caused directly by earth movement; and

   **(3)** The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

b. This coverage does not include loss:

   **(1)** To covered property which results because the glass or safety glazing material has been broken, except as provided in **a.(3)** above; or

   **(2)** On the "residence premises" if the dwelling has been vacant for more than 30 consecutive days immediately before the loss, except when the breakage results directly from earth movement as provided in **a.(2)** above. A dwelling being constructed is not considered vacant.

c. This coverage does not increase the limit of liability that applies to the damaged property.

**10. Landlord's Furnishings**

We will pay up to $2,500 for your appliances, carpeting and other household furnishings, in each apartment on the "residence premises" regularly rented or held for rental to others by an "insured", for loss caused by a Peril Insured Against in Coverage **C**, other than Theft.

This limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishings involved in the loss.

This coverage does not increase the limit of liability applying to the damaged property.

**11. Ordinance Or Law**

a. You may use up to the greater of 10%, or the higher percentage, if any, shown in the Declarations for ORDINANCE OR LAW, or the limit of liability that applies to Coverage **A** for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

   **(1)** The construction, demolition, remodeling, renovation or repair of that part of a covered "building" or other structure damaged by a Peril Insured Against;

   **(2)** The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered "building" or other structure; or

   **(3)** The remodeling, removal or replacement of the portion of the undamaged part of a covered "building" or other structure necessary to complete the remodeling, repair or replacement of that part of the covered "building" or other structure damaged by a Peril Insured Against.

b. You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in **a.** above.

c. We do not cover:

   **(1)** The loss in value to any covered "building" or other structure due to the requirements of any ordinance or law; or

   **(2)** The costs to comply with any ordinance or law which requires an "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants in or on any covered "building" or other structure.

   Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

HO003 (09/2014)  Includes copyrighted material of Insurance Services Office, Inc., with its permission.

This additional coverage does not apply to loss caused in any way by the peril of earthquake, even if the peril of earthquake is a covered peril in other parts of your policy.

This coverage is additional insurance.

**12. Grave Markers**

We will pay up to $5,000 for grave markers, including mausoleums, on or away from the "residence premises" for loss caused by a Peril Insured Against under Coverage **C**.

This coverage does not increase the limits of liability that apply to the damaged covered property.

**13. Refrigerated Products Coverage**

We insure, up to $500, covered property stored in freezers or refrigerators on the "residence premises" for direct loss caused by:

**a.** Loss of power to the refrigeration unit. Loss of power means the complete or partial interruption of electric power due to conditions beyond an "insured's" control. Loss of power must be caused by damage to:

    **(1)** Generating equipment; or

    **(2)** Transmitting equipment; or

**b.** Mechanical failure of the unit which stores the property.

Coverage will apply only if you have maintained the refrigeration unit in proper working condition immediately prior to the loss.

This coverage does not increase the limit of liability for Coverage **C**.

We will pay only that part of the total of all loss payable that exceeds $100.

No other deductible applies to this coverage.

The **Power Failure** exclusion does not apply to this coverage.

**14. Limited "Fungi", Other Microbes or Rot**

**a.** If a loss caused by a Peril Insured Against results in "fungi", other microbes or rot, we will pay for:

    **(1)** Remediation of the "fungi", other microbes or rot. This includes payment for the reasonable and necessary cost to:

        **(a)** Remove the "fungi", other microbes or rot from the covered property or to repair, restore or replace that property; and

        **(b)** Tear out and replace any part of the "building" or other covered property as needed to gain access to the "fungi", other microbes or rot;

    **(2)** Any reasonable and necessary increase in living expense you incur:

        **(a)** So that your household can maintain its normal standard of living; or

        **(b)** For loss of fair rental value;

        if the "fungi", other microbes or rot makes the "residence premises" not fit to live in; and

    **(3)** Any reasonable and necessary testing or monitoring of air or property to confirm the absence, presence or level of the "fungi", other microbes or rot, whether performed prior to, during or after removal, repair, restoration or replacement.

**b.** We will pay under the additional coverage only if:

    **(1)** The covered loss occurs during the policy period;

    **(2)** All reasonable means were used to save and preserve the property at the time of and after the covered loss; and

    **(3)** We receive prompt notice of the covered cause of loss that is alleged to have resulted in "fungi",

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

other microbes or rot.

    **c.** The most we will pay under this additional coverage is the limit of liability shown in the Declarations for Limited Fungi, Other Microbes or Rot. This is the most we will pay for the total of all loss or costs regardless of the:

        **(1)** Number of locations or items of property insured under the policy; or

        **(2)** Number of losses or claims made during the policy period.

    This coverage does not increase the limit of liability that applies to the damaged property.

## SECTION I – PERILS INSURED AGAINST

**A. Coverage A – Dwelling And Coverage B – Other Structures**

    **1.** We insure against direct physical loss to property described in Coverages **A** and **B**.

    **2.** We do not insure, however, for loss:

        **a.** Excluded under Section I – Exclusions;

        **b.** Involving collapse, except as provided in **E.8.** Collapse under Section I – Property Coverages; or

        **c.** Caused by:

            **(1)** Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This provision does not apply if you have used reasonable care to:

                **(a)** Maintain heat in the "building"; or

                **(b)** Shut off the water supply and drain all systems and appliances of water.

            However, if the "building" is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the "building" for coverage to apply.

            For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment;

            **(2)** Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

                **(a)** Fence, pavement, patio or swimming pool;

                 **(b)** Footing, foundation, bulkhead, wall, or any other structure or device that supports all or part of a "building", or other structure;

                **(c)** Retaining wall or bulkhead that does not support all or part of a "building" or other structure; or

                **(d)** Pier, wharf or dock;

             **(3)** Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

            **(4)** Vandalism and malicious mischief, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

            **(5)** Constant or repeated seepage or leakage of water or steam, or the presence of condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more; or

            **(6)** Any of the following:

                **(a)** Wear and tear, marring, deterioration;

                **(b)** Mechanical breakdown, latent defect, inherent vice or any quality in property that causes it to damage or destroy itself;

**HO003 (09/2014)**      Includes copyrighted material of Insurance Services Office, Inc., with its permission.

(c) Smog, rust or other corrosion, or dry rot;

(d) Smoke from agricultural smudging or industrial operations;

(e) Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against named under Coverage **C**.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

(f) Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings;

(g) Birds, vermin, rodents or insects;

(h) Nesting or infestation, or discharge or release of waste products or secretions, by any animals;

(i) Animals owned or kept by an "insured"; or

(j) Pressure from, invasion by or presence of tree, shrub or plant roots.

**Exception To c. (6)**

Unless the loss is otherwise excluded, we cover loss to property covered under Coverage **A** or **B** resulting from an accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the "residence premises". This includes the cost to tear out and replace any part of a "building", or other structure, on the "residence premises", but only when necessary to repair the system or appliance. However, such tear out and replacement coverage only applies to the other structures if the water or steam causes actual damage to a "building" on the "residence premises".

We do not cover loss to the system or appliance from which this water or steam escaped.

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

Under **2.b.** and **c.** above, any ensuing loss to property described in Coverages **A** and **B** not precluded by any other provision in this policy is covered.

**B. Coverage C – Personal Property**

We insure for direct physical loss to the property described in Coverage **C** caused by any of the following perils unless the loss is excluded in Section **I – Exclusions**.

**1. Fire Or Lightning**

**2. Windstorm Or Hail**

This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed "building".

This peril does not include loss to the property contained in a "building" caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the "building" causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

**3. Explosion**

**4. Riot Or Civil Commotion**

**5. Aircraft**

This peril includes self-propelled missiles and spacecraft.

**6. Vehicles**

**7. Smoke**

This peril means sudden and accidental damage from smoke, including the emission or puffback of smoke, soot, fumes or vapors from a boiler, furnace or related equipment.

This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

**8. Vandalism Or Malicious Mischief**

**9. Theft**

  a. This peril includes attempted theft and loss of property from a known place when it is likely that the property has been stolen.

  b. This peril does not include loss caused by theft:

  (1) Committed by an "insured";

  (2) In or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

  (3) From that part of a "residence premises" rented by an "insured" to someone other than another "insured"; or

  (4) That occurs off the "residence premises" of:

  (a) Trailers, semitrailers and campers;

  (b) Watercraft of all types, and their furnishings, equipment and outboard engines or motors; or

  (c) Property while at any other residence owned by, rented to, or occupied by an "insured", except while an "insured" is temporarily living there. Property of an "insured" who is a student is covered while at the residence the student occupies to attend school as long as the student has been there at any time during the 60 days immediately before the loss.

**10. Falling Objects**

This peril does not include loss to property contained in a "building" unless the roof or an outside wall of the "building" is first damaged by a falling object. Damage to the falling object itself is not included.

**11. Weight Of Ice, Snow Or Sleet**

This peril means weight of ice, snow or sleet which causes damage to property contained in a "building".

**12. Sudden and Accidental Discharge Or Overflow Of Water Or Steam**

  a. This peril means a sudden and accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

  b. This peril does not include loss:

  (1) To the system or appliance from which the water or steam escaped;

  (2) Caused by or resulting from freezing except as provided in Peril Insured Against **14.** Freezing;

  (3) On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises"; or

  (4) Caused by mold, fungus or wet rot unless hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure, subject to the limit in the Additional Coverages **E.14.** Limited "Fungi", Other Microbes or Rot.

  c. In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

  d. Section I – Exclusion **A.3.** Water Damage, Paragraphs **a.** and **c.** that apply to surface water and water below the surface of the ground do not apply to loss by water covered under this peril.

**13. Sudden And Accidental Tearing Apart, Cracking, Burning Or Bulging**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

This peril means sudden and accidental tearing apart, cracking, burning or bulging of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

We do not cover loss caused by or resulting from freezing under this peril.

**14. Freezing**

a. This peril means freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, but only if you have used reasonable care to:

(1) Maintain heat in the "building"; or

(2) Shut off the water supply and drain all systems and appliances of water.

However, if the "building" is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the "building" for coverage to apply.

b. In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

**15. Sudden And Accidental Damage From Artificially Generated Electrical Current**

This peril does not include loss to tubes, transistors, electronic components or circuitry that is a part of appliances, fixtures, computers, home entertainment units or other types of electronic apparatus.

**16. Volcanic Eruption**

This peril does not include loss caused by earthquake, land shock waves or tremors.

## COVERAGE A – DWELLING AND COVERAGE B – OTHER STRUCTURES AND COVERAGE C – PERSONAL PROPERTY

Under Coverage **A**, **B** or **C**, we do not cover diminution in value of any dwelling, other structures or personal property either repaired or replaced. Diminution in value means that actual or perceived loss in market value or resale value which results from a direct physical loss.

## SECTION I – EXCLUSIONS

**A.** We do not insure, under any coverage, for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of

(a) the cause of the excluded event;

(b) other causes of the loss; or

(c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss.

**1. Ordinance Or Law**

Ordinance Or Law means any ordinance or law:

a. Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This Exclusion **A.1.a.** does not apply to the amount of coverage that may be provided for in **E.11.** Ordinance Or Law under Section I – Property Coverages;

b. The requirements of which result in a loss in value to property; or

c. Requiring any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This Exclusion **A.1.** applies whether or not the property has been physically damaged.

**2. Earth Movement**

Earth Movement means:

**a.** Earthquake and earthquake aftershocks;

**b.** Volcano activity including:

    **(1)** Volcanic Eruption;

    **(2)** Volcanic Explosion;

    **(3)** Effusion of Volcanic Material; or

    **(4)** Lava Flow;

**c.** Mudslide, including mudflow, debris flow, landslide, avalanche, or sediment;

**d.** Sinkhole; or

**e.** Subsidence;

**f.** Excavation collapse;

**g.** Erosion; or

**h.** Any expansion, shifting, rising, sinking, contracting, or settling of the earth, soil or land.

This exclusion applies whether or not the earth, soil or land is combined or mixed with water or any other liquid or natural or manmade material.

However, loss caused directly by the specified perils:

    **(a)** fire;

    **(b)** explosion;

    **(c)** Breakage of dwelling glass or safety glazing material, including storm doors or windows; or

    **(d)** Theft

Following any "earth movement" is covered.

**3. Water Damage**

Water Damage, meaning:

**a.** Flood, surface water, ground water, storm surge, waves, wave wash, tidal water including tidal wave and tsunami, tsunami seiche, tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind;

**b.** Any water or water-borne material that enters through or backs up through sewers or drains or which overflows or is discharged from a sump, sump pump or related equipment; or

**c.** Any water or water-borne material located below the surface of the ground, including water or water-borne material

    **(1)** which exerts pressure on, or seeps, leaks or flows into:

        **(a)** Any part of the dwelling or other structures;

        **(b)** The foundation of the dwelling or other structures;

        **(c)** Any paved surface located on the "residence premises"; or

        **(d)** Any spa, hot tub, or swimming pool

    **(2)** Which causes "earth movement"; or

**d.** Any overflow, release, migration or discharge of water in any manner from a dam, levee, dike, hurricane barrier or any water or flood control device.

Direct loss by fire, explosion or theft resulting from water damage is covered.

**4. Power Failure**

Power Failure means the failure of power or other utility service if the failure takes place off the "residence premises". But if the failure results in a loss, from a Peril Insured Against on the "residence premises", we will pay for the loss caused by that peril.

This exclusion does not apply to the REFRIGERATED PRODUCTS COVERAGE that may be afforded under Additional Coverage **E. 13.**

**5. Neglect**

Neglect means neglect of an "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

**6. War**

War includes the following and any consequence of any of the following:

  **a.** Undeclared war, civil war, insurrection, rebellion or revolution;

  **b.** Warlike act by a military force or military personnel; or

  **c.** Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

**7. Nuclear Hazard**

This Exclusion **A.7.** pertains to Nuclear Hazard to the extent set forth in **N.** Nuclear Hazard Clause under Section I – Conditions.

**8. Intentional Loss**

Intentional Loss means any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss.

In the event of such loss, no "insured" is entitled to coverage, even "insureds" who did not commit or conspire to commit the act causing the loss.

This exclusion does not apply, with respect to loss to covered property caused by fire, to an "insured" who does not commit or conspire to commit any act that results in loss by fire. We cover such "insured" only to the extent of that "insured's" legal interest, but not exceeding the applicable limit of liability.

We may apply reasonable standards of proof to claims for such loss.

**9. Governmental Action**

Governmental Action means the destruction, confiscation or seizure of property described in Coverage **A, B** or **C** by order of any governmental or public authority.

This exclusion does not apply to such acts ordered by any governmental or public authority that are taken at the time of a fire to prevent its spread, if the loss caused by fire would be covered under this policy.

**10. Asbestos Removal**

**11. "Fungi", Other Microbes or Rot,** meaning any loss or cost resulting from, arising out of, caused by, consisting of, or related to, "fungi", other microbes or rot. This exclusion does not apply to:

  **a.** "Fungi", other microbes or rot coverage that may be afforded under Additional Coverage **E.14.** Limited "Fungi", Other Microbes or Rot; or

  **b.** "Fungi", other microbes or rot that results from fire or lightning.

**B.** We do not insure for loss to property described in Coverages **A** and **B** caused by any of the following.

However, any ensuing loss to property described in Coverages **A** and **B** not precluded by any other provision in this policy is covered.

  **1.** Weather conditions. However, this exclusion only applies if weather conditions contribute in any way with

**Page 18 of 3**

a cause or event excluded in **A.** above to produce the loss.

2. Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

3. Faulty, inadequate or defective:

   **a.** Planning, zoning, development, surveying, siting;

   **b.** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

   **c.** Materials used in repair, construction, renovation or remodeling; or

   **d.** Maintenance;

   of part or all of any property whether on or off the "residence premises".

## SECTION I – CONDITIONS

### A. Your Duties to Maintain Policy Limits

It is your sole responsibility to propose and then maintain adequate amounts of insurance on your dwelling and personal property. We will provide and adjust annually, either up or down, an estimate of the "replacement cost" based upon general factors for your area supplied by appraisal agencies. We do not guarantee that the limits quoted, offered, selected or adjusted annually will be sufficient to rebuild your dwelling or replace your personal property. Alterations to your property may result in significant changes in "replacement cost". Rebuilding costs may rise substantially in the event of regional mass disasters. In the event that you do not agree with the limits or annual adjustments we suggest, you may obtain an appraisal or contractor estimate which we will consider, but are not obligated to accept. Higher coverage amounts to which we agree will result in higher premiums.

You will be notified with each renewal of your policy of the new amount of coverage. Payment of your renewal is all that is necessary to indicate your acceptance of the new amount.

### B. Insurable Interest And Limit Of Liability

Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

1. To an "insured" for more than the amount of such "insured's" interest at the time of loss; or

2. For more than the applicable limit of liability.

### C. Duties After Loss

In case of a loss to covered property, the following duties must be performed either by you, an "insured" seeking coverage, or a representative of either:

1. Give prompt notice to us or our agent;

2. Notify the police in case of loss by theft;

3. Notify the credit card or electronic fund transfer card or access device company in case of loss as provided for in **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I – Property Coverages;

4. Protect the property from further damage. If repairs to the property are required, you must:

   **a.** Make reasonable and necessary repairs to protect the property; and

   **b.** Keep an accurate record of repair expenses;

5. Cooperate with us in the investigation of a claim;

6. Prepare an inventory of damaged personal property showing the quantity, description, "actual cash value" and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

7.  As often as we reasonably require:

    a.  Show the damaged property;

    b.  Provide us with records and documents we request and permit us to make copies; and

    c.  Submit to examination under oath and subscribe the same. We may examine an "insured" separately and apart from the presence of any other "insured".

8.  Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

    a.  The time and cause of loss;

    b.  The interests of all "insureds" and all others in the property involved and all liens on the property;

    c.  Other insurance which may cover the loss;

    d.  Changes in title or occupancy of the property during the term of the policy;

    e.  Specifications of damaged "buildings" and detailed repair estimates;

    f.  The inventory of damaged personal property described in **6.** above;

    g.  Receipts for additional living expenses incurred and records that support the fair rental value loss; and

    h.  Evidence or affidavit that supports a claim under **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I – Property Coverages, stating the amount and cause of loss.

**D.  Loss Settlement**

In this Condition **D.**, the terms "cost to repair or replace" and "replacement cost" do not include the increased costs incurred to comply with the enforcement of any ordinance or law, except to the extent that coverage for these increased costs is provided in **E.11.** Ordinance Or Law under Section I – Property Coverages.

We will not pay for diminution in value of any property. Diminution in value means the actual or perceived loss in market or resale value which results from a direct physical loss.

Covered property losses are settled as follows:

1.  Property of the following types:

    a.  Personal property;

    b.  Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to "buildings";

    c.  Structures that are not "buildings"; and

    d.  Grave markers, including mausoleums;

    at "actual cash value" at the time of loss but not more than the amount required to repair or replace.

2.  "Buildings" covered under Coverage **A** or **B** at "replacement" cost without deduction for depreciation, subject to the following:

    a.  We will pay the cost to repair or replace, after application of deductible and without deduction for depreciation, but not more than the least of the following amounts:

        (1)  The limit of liability under this policy that applies to the "building";

        (2)  The "replacement cost" of that part of the "building" damaged with material of like kind and quality and for like use; or

        (3)  The necessary amount actually spent to repair or replace the damaged "building".

    If the building is rebuilt at a new premises, the cost described in **(2)** above is limited to the cost which would have been incurred if the "building" had been built at the original premises.

    b.  We will pay no more than the "actual cash value" of the damage until actual repair or replacement is

**Page 20 of 3**

**HO003 (09/2014)**    Includes copyrighted material of Insurance Services Office, Inc., with its permission.

complete.

However, if the cost to repair or replace the damage is less than $2,500, we will settle the loss according to the provisions in 2.a. above whether or not actual repair or replacement is complete.

**(1)** Less than 5% of the amount of insurance in this policy on the building; and

**(2)** Less than $2,500;

we will settle the loss as noted in **2.a.** and **b.** above whether or not actual repair or replacement is complete.

**c.** You may disregard the "replacement cost" loss settlement provisions and make claim under this policy for loss to" buildings" on an "actual cash value" basis. You may then make claim for any additional liability on a "replacement cost" basis, provided you notify us of your intent to do so within 180 days after the date of loss.

## E. Loss To A Pair Or Set

In case of loss to a pair or set we may elect to:

**1.** Repair or replace any part to restore the pair or set to its value before the loss; or

**2.** Pay the difference between "actual cash value" of the property before and after the loss.

## F. Appraisal

If you and we fail to agree on the amount, cause or extent of the loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount, cause or extent agreed upon will be the amount, cause or extent of the loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount, cause or extent of the loss.

Each party will:

**1.** Pay its own appraiser; and

**2.** Bear the other expenses of the appraisal and umpire equally.

## G. Other Insurance And Service Agreement

If a loss covered by this policy is also covered by:

**1.** Other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss; or

**2.** A service agreement, this insurance is excess over any amounts payable under any such agreement.

Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized as insurance.

## H. Suit Against Us

No action can be brought against us unless there has been full compliance with all of the terms under Section I of this policy and the action is started within one year after the date of loss.

## I. Our Option

If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with material or property of like kind and quality. At our option, we may take all or any part of the property at the agreed or appraised value.

## J. Loss Payment

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 30 days after we receive your proof of loss and:

**Page 21 of 34**

HO003 (09/2014)          Includes copyrighted material of Insurance Services Office, Inc.,
with its permission.

1. Reach an agreement with you;

2. There is an entry of a final judgment; or

3. There is a filing of an appraisal award with us.

**K. Abandonment Of Property**

We need not accept any property abandoned by an "insured".

**L. Mortgage Clause**

1. If a mortgagee is named in this policy, any loss payable under Coverage **A** or **B** will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

2. If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

    a. Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

    b. Pays any premium due under this policy on demand if you have neglected to pay the premium; and

    c. Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Paragraphs **F.** Appraisal, **H.** Suit Against Us and **J.** Loss Payment under Section I – Conditions also apply to the mortgagee.

3. If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

4. If we pay the mortgagee for any loss and deny payment to you:

    a. We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

    b. At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

5. Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

**M. No Benefit To Bailee**

We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

**N. Nuclear Hazard Clause**

1. "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

2. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against.

3. This policy does not apply under Section I to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

**O. Recovered Property**

If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

**P. Volcanic Eruption Period**

One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

**Q. Policy Period**

This policy applies only to loss which occurs during the policy period.

**R. Concealment Or Fraud**

1. With respect to loss caused by fire, we do not provide coverage to the "insured" who has:

    a. Intentionally concealed or misrepresented any material fact or circumstance;

    b. Engaged in fraudulent conduct; or

    c. Made false statements;

    relating to this insurance.

2. With respect to loss caused by a peril other than fire, we provide coverage to no "insureds" under this policy, if whether before or after a loss an "insured" has:

    a. Intentionally concealed or misrepresented any material fact or circumstance;

    b. Engaged in fraudulent conduct; or

    c. Made false statements;

    relating to this insurance.

**S. Loss Payable Clause**

If the Declarations show a loss payee for certain listed insured personal property, the definition of "insured" is changed to include that loss payee with respect to that property.

If we decide to cancel or not renew this policy, that loss payee will be notified in writing.

**T. Premises Alarm or Fire Protection System**

(Applies only if PROTECTIVE DEVICES CREDIT is shown in the Declarations.)

We acknowledge the installation of an alarm system and/or an automatic sprinkler system approved by us on the "residence premises". You agree to maintain this systems or systems in working order and let us know promptly of any change, including removal, made to the system(s).

# SECTION II – LIABILITY COVERAGES

**A. Coverage E – Personal Liability**

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.

Damages, as used above, does not include actions for equitable relief or injunctive relief unless such action arises out of physical injury to some person to which Coverage E applies, or out of property damage to which Coverage E applies.

**B. Coverage F – Medical Payments To Others**

We will pay the necessary medical expenses that are incurred or medically ascertained within two years from the date of an accident causing "bodily injury". Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees". As to others, this coverage applies only:

1. To a person on the "insured location" with the permission of an "insured"; or

2. To a person off the "insured location", if the "bodily injury":

    **a.** Arises out of a condition on the "insured location" or the ways immediately adjoining;

    **b.** Is caused by the activities of an "insured";

    **c.** Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured"; or

    **d.** Is caused by an animal owned by or in the care of an "insured".

## SECTION II – EXCLUSIONS

### A. "Motor Vehicle Liability"

**1.** Coverages **E** and **F** do not apply to any "motor vehicle liability" if, at the time and place of an "occurrence", the involved "motor vehicle":

    **a.** Is registered for use on public roads or property;

    **b.** Is not registered for use on public roads or property, but such registration is required by a law, or regulation issued by a government agency, for it to be used at the place of the "occurrence"; or

    **c.** Is being:

        **(1)** Operated in, or practicing for, any prearranged or organized race, speed contest or other competition;

        **(2)** Rented to others;

        **(3)** Used to carry persons or cargo for a charge; or

        **(4)** Used for any "business" purpose except for a motorized golf cart while on a golfing facility.

**2.** If Exclusion **A.1.** does not apply, there is still no coverage for "motor vehicle liability", unless the "motor vehicle" is:

    **a.** In dead storage on an "insured location";

    **b.** Used solely to service an "insured's" residence;

    **c.** Designed to assist the handicapped and, at the time of an "occurrence", it is:

        **(1)** Being used to assist a handicapped person; or

        **(2)** Parked on an "insured location";

    **d.** Designed for recreational use off public roads and:

        **(1)** Not owned by an "insured"; or

        **(2)** Owned by an "insured" provided the "occurrence" takes place on an "insured location" as defined in Definition **B.6.a., b., d., e.** or **h.;** or

    **e.** A motorized golf cart that is owned by an "insured", designed to carry up to 4 persons, not built or modified after manufacture to exceed a speed of 25 miles per hour on level ground and, at the time of an "occurrence", is within the legal boundaries of:

        **(1)** A golfing facility and is parked or stored there, or being used by an "insured" to:

            **(a)** Play the game of golf or for other recreational or leisure activity allowed by the facility;

            **(b)** Travel to or from an area where "motor vehicles" or golf carts are parked or stored; or

            **(c)** Cross public roads at designated points to access other parts of the golfing facility; or

        **(2)** A private residential community, including its public roads upon which a motorized golf cart can legally travel, which is subject to the authority of a property owners' association and contains an "insured's" residence.

### B. "Watercraft Liability"

**1.** Coverages **E** and **F** do not apply to any "watercraft liability" if, at the time of an "occurrence", the involved

watercraft is being:

    **a.** Operated in, or practicing for, any prearranged or organized race, speed contest or other competition. This exclusion does not apply to a sailing vessel or a predicted log cruise;

    **b.** Rented to others;

    **c.** Used to carry persons or cargo for a charge; or

    **d.** Used for any "business" purpose; or

    **e.** Designed as an airboat, air cushion, wet bike, jet ski or other craft using a water jet pump powered by an internal combustion engine as a source of propulsion.

**2.** If Exclusion **B.1.** does not apply, there is still no coverage for "watercraft liability" unless, at the time of the "occurrence", the watercraft:

    **a.** Is stored;

    **b.** Is a sailing vessel, with or without auxiliary power, that is:

        **(1)** Less than 26 feet in overall length; or

        **(2)** 26 feet or more in overall length and not owned by or rented to an "insured"; or

    **c.** Is not a sailing vessel and is powered by:

        **(1)** An inboard or inboard-outdrive engine or motor, including those that power a water jet pump, of:

            **(a)** 50 horsepower or less and not owned by an "insured"; or

            **(b)** More than 50 horsepower and not owned by or rented to an "insured"; or

        **(2)** One or more outboard engines or motors with:

            **(a)** 25 total horsepower or less;

            **(b)** More than 25 horsepower if the outboard engine or motor is not owned by an "insured";

            **(c)** More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it during the policy period; or

            **(d)** More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it before the policy period, but only if:

                **(i)** You declare them at policy inception; or

                **(ii)** Your intent to insure them is reported to us in writing within 45 days after you acquire them. The coverages in **(c)** and **(d)** above apply for the policy period.

        Horsepower means the maximum power rating assigned to the engine or motor by the manufacturer.

**C. "Aircraft Liability"**

This policy does not cover "aircraft liability".

**D. "Hovercraft Liability"**

This policy does not cover "hovercraft liability".

**E. Coverage E – Personal Liability And Coverage F – Medical Payments To Others**

Coverages **E** and **F** do not apply to the following:

**1. Expected Or Intended Injury**

"Bodily injury" or "property damage" which is expected or intended by an "insured", even if the resulting "bodily injury" or "property damage":

    **a.** Is of a different kind, quality or degree than initially expected or intended; or

    **b.** Is sustained by a different person, entity or property than initially expected or intended.

HO003 (09/2014)    Includes copyrighted material of Insurance Services Office, Inc., with its permission.

However, this Exclusion **E.1.** does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force by an "insured" to protect persons or property;

2. **"Business"**

   a. "Bodily injury" or "property damage" arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured".

   This Exclusion **E.2.** applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

   b. This Exclusion **E.2.** does not apply to:

   (1) The rental or holding for rental of an "insured location";

   (a) On an occasional basis if used only as a residence;

   (b) In part for use only as a residence, unless a single-family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

   (c) In part, as an office, school, studio or private garage; and

   (d) Shown in the Declarations as an ADDITIONAL RESIDENCE RENTED TO OTHERS; or

   (e) Shown in the Declarations as a STRUCTURES RENTED TO OTHERS.

   (2) An "insured" under the age of 21 years involved in a part-time or occasional, self-employed "business" with no employees;

3. **Professional Services**

   "Bodily injury" or "property damage" arising out of the rendering of or failure to render professional services;

4. **"Insured's" Premises Not An "Insured Location"**

   "Bodily injury" or "property damage" arising out of a premises:

   a. Owned by an "insured";

   b. Rented to an "insured"; or

   c. Rented to others by an "insured";

   that is not an "insured location";

5. **War**

   "Bodily injury" or "property damage" caused directly or indirectly by war, including the following and any consequence of any of the following:

   a. Undeclared war, civil war, insurrection, rebellion or revolution;

   b. Warlike act by a military force or military personnel; or

   c. Destruction, seizure or use for a military purpose.

   Discharge of a nuclear weapon will be deemed a warlike act even if accidental;

6. **Communicable Disease**

   "Bodily injury" or "property damage" which arises out of the transmission of a communicable disease by an "insured";

7. **Sexual Molestation, Corporal Punishment Or Physical Or Mental Abuse**

   "Bodily injury" or "property damage" arising out of sexual molestation, corporal punishment or physical or mental abuse; or

8. **Controlled Substance** .

"Bodily injury" or "property damage" arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the lawful orders of a licensed health care professional.

9. **"Fuel Systems"**

   a. We do not cover "bodily injury" or "property damage" arising out of the threatened or actual discharge, dispersal, emission, escape, flowing, leaking, leaching, migration, release, seepage, or spill of fuel oil, heating oil, kerosene, liquid propane or gasoline regardless of how or where such may take place.

   b. We do not cover any loss, liability, cost, or expense arising out of any of the following:

      (1) Any order, directive, demand or request that an "insured" or others clean up, neutralize, detoxify, monitor, neutralize, remove, test for, treat, or in any way assess the effects of or respond to heating oil, fuel oil, kerosene, liquid propane or gasoline or contamination caused or contributed to in whole or in part by heating oil, fuel oil, kerosene, liquid propane or gasoline.

      (2) Any suit or claim by, or on behalf of, any governmental authority for damages or reimbursement because of cleaning up, containing, detoxifying, monitoring, neutralizing, removing, testing for, treating, or in any way assessing the effects of or responding to fuel oil, heating oil, kerosene, liquid propane or gasoline or contamination caused or contributed to, in whole or in part, by fuel oil, heating oil, kerosene, liquid propane or gasoline.

10. **Lead, Lead Pigment, Lead Compounds or Other Forms of Lead**

    "Bodily Injury" or "property damage" arising out of, resulting from, caused by or contributed to by the actual or alleged presence or actual, alleged or threatened dispersal, release, ingestion, inhalation or absorption of lead, lead pigment, lead compounds or lead in any form which is or was contained or incorporated into any material or substance. This exclusion applies but is not limited to:

    a. Any instructions, supervision, recommendations, warnings or advice given in connection with the above;

    b. Any obligation to share damages, losses, costs, payments or expenses with or repay someone else who must make payment because of such "bodily injury" or "property damage" loss, cost, payment or expense; or

    c. Any request, order or requirement to test for, monitor, abate, mitigate, remediate, contain, remove, dispose of, or in any way respond to or assess the effects of lead, lead pigment, lead compounds or materials or substances containing lead in any form.

11. **"Fungi", Other Microbes or Rot**

    "Bodily Injury" or "property damage" arising out of, consisting of, caused by, contributed to, aggravated by or resulting from, whether directly or indirectly, by "fungi", other microbes or rot.

    This includes:

    a. The cost of testing, monitoring, abating, mitigating, removing, remediating or disposing of "fungi", other microbes or rot;

    b Any supervision, instruction, disclosures or failures to disclose, recommendations, warnings, advice given, or that allegedly should have been given in connection with "bodily injury" or "property damage" consisting of, arising out of, caused by, contributed to, aggravated by or resulting from, whether directly or indirectly, by "fungi", other microbes or rot or the activities in **11.a.** above;

    c. Any obligation to share with or repay another who must pay damages because of "bodily injury" or "property damage" damage of the type described in this exclusion. This applies regardless of any other cause that contributed directly or indirectly, concurrently or in any sequence to the "bodily injury" or "property damage"; and

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

d. Liability imposed upon an "insured" by any governmental authority for "bodily injury" or "property damage" consisting of, arising out of, caused by, contributed to, aggravated by or resulting from, whether directly or indirectly, by "fungi", other microbes or rot.

**12. Segways**

Coverages **E** and **F** do not apply to "bodily injury" or "property damage" arising out of the ownership, maintenance, use, operation, loading or unloading of Segways.

**13. Child Care Services**

Coverages **E** and **F** do not apply to "bodily injury" or "property damage" arising out of the legal liability of an "insured" to:

a. any person who is in the care of an "insured" because of child care services provided by or at the direction of;

   (1) an "insured";

   (2) an employee of an "insured"; or

   (3) an other person actually or apparently acting on behalf of an "insured".

b. any person who makes a claim because of "bodily injury" to any person who is in the care of an "insured" because of child care services provided by or at the direction of;

   (1) an "insured";

   (2) an employee of an "insured"; or

   (3) an other person actually or apparently acting on behalf of an "insured".

This exclusion does not apply to the occasional child care services provided by an "insured", or to the part- time child care service provided by an "insured" who is under 19 years of age.

Exclusions **A.** "Motor Vehicle Liability", **B.** "Watercraft Liability", **C.** "Aircraft Liability", **D.** "Hovercraft Liability" and **E.4.** do not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured".

**F. Coverage E – Personal Liability**

Coverage **E** does not apply to:

1. Liability:

a. for any loss assessment charged against you as a member of an association, corporation or community of property owners, except as provided in **D.** Loss Assessment under Section II – Additional Coverages;

b. under any contract or agreement entered into by an "insured". However, this exclusion does not apply to written contracts:

   (1) That directly relate to the ownership, maintenance or use of an "insured location"; or

   (2) Where the liability of others is assumed by you prior to an "occurrence"; unless excluded in **a.** above or elsewhere in this policy;

c. for punitive damages awarded against an "insured";

d. arising out of any illegal act or criminal act committed by or at the direction of an "insured"; or

e. arising out of the sale or transfer of real property, whether an "insured location" or otherwise, including but not limited to known or unknown property or structural defects, known or hidden defects in the plumbing, heating, and electrical systems, known or unknown soil conditions, air or water quality problems, or drainage problems, or concealment or misrepresentation of any known defects.

f. arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants, at any time.

   Any loss, cost or expense arising out of any:

**(1)** Request, demand or order that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants; or

**(2)** Claim or suit by or on behalf of governmental authority for damages because of testing for, monitoring, clean up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**2.** "Property damage" to property owned by an "insured". This includes costs or expenses incurred by an "insured" or others to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an "insured location";

**3.** "Property damage" to property rented to, occupied or used by or in the care of an "insured". This exclusion does not apply to "property damage" caused by fire, smoke or explosion;

**4.** "Bodily injury" to any person eligible to receive any benefits voluntarily provided or required to be provided by an "insured" under any:

    **a.** Workers' compensation law;

    **b.** Non-occupational disability law; or

    **c.** Occupational disease law;

**5.** "Bodily injury" or "property damage" for which an "insured" under this policy:

    **a.** Is also an insured under a nuclear energy liability policy issued by the

        **(1)** Nuclear Energy Liability Insurance Association;

        **(2)** Mutual Atomic Energy Liability Underwriters;

        **(3)** Nuclear Insurance Association of Canada;

        or any of their successors; or

    **b.** Would be an "insured" under such a policy but for the exhaustion of its limit of liability; or

**6.** "Bodily injury" to you or an "insured" as defined under Definition **9.a.** or **b.**

This exclusion also applies to any claim made or suit brought against you or an "insured" to:

    **a.** Repay; or

    **b.** Share damages with;

another person who may be obligated to pay damages because of "bodily injury" to an "insured".

**7.** "Bodily injury" to an "employee", "residence employee" or a temporary employee furnished to the "insured" to substitute for a permanent "residence employee" arising out of or in the course of the employee's employment by any Additional Insured named in the Declarations; or

**8.** "Bodily Injury" to an "insured" or "bodily injury" to an "insured" whenever the ultimate benefit of providing coverage for such "bodily injury" accrues directly or indirectly to an "insured".

## G. Coverage F – Medical Payments To Others

Coverage **F** does not apply to "bodily injury":

**1.** To a "residence employee" if the "bodily injury":

    **a.** Occurs off the "insured location"; and

    **b.** Does not arise out of or in the course of the "residence employee's" employment by an "insured";

**2.** To any person eligible to receive benefits voluntarily provided or required to be provided under any:

    a. Workers' compensation law;

    b. Non-occupational disability law; or

    c. Occupational disease law;

3. From any:

    a. Nuclear reaction;

    b. Nuclear radiation; or

    c. Radioactive contamination;

    all whether controlled or uncontrolled or however caused; or

    d. Any consequence of any of these; or

4. To any person, other than a "residence employee" of an "insured", regularly residing on any part of the "insured location".

## SECTION II – ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

### A. Claim Expenses

We pay:

1. Expenses we incur and costs taxed against an "insured" in any suit we defend;

2. Premiums on bonds required in a suit we defend, but not for bond amounts more than the Coverage **E** limit of liability. We need not apply for or furnish any bond;

3. Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or suit; and

4. Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

### B. First Aid Expenses

We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy. We will not pay for first aid to an "insured".

### C. Damage To Property Of Others

1. We will pay, at replacement cost, up to $1,000 per "occurrence" for "property damage" to property of others caused by an "insured".

2. We will not pay for "property damage":

    a. To the extent of any amount recoverable under Section I;

    b. Caused intentionally by an "insured" who is 13 years of age or older;

    c. To property owned by an "insured";

    d. To property owned by or rented to a tenant of an "insured" or a resident in your household; or

    e. Arising out of:

      (1) A "business" engaged in by an "insured";

      (2) Any act or omission in connection with a premises owned, rented or controlled by an "insured", other than the "insured location"; or

      (3) The ownership, maintenance, occupancy, operation, use, loading or unloading of aircraft, hovercraft, watercraft or "motor vehicles".

      This Exclusion **e. (3)** does not apply to a "motor vehicle" that:

    (a) Is designed for recreational use off public roads;

    (b) Is not owned by an "insured"; and

    (c) At the time of the "occurrence", is not required by law, or regulation issued by a government agency, to have been registered for it to be used on public roads or property.

## D. Loss Assessment

1. We will pay up to $1,000 for your share of loss assessment charged against you, as owner or tenant of the "residence premises", during the policy period by a corporation or association of property owners, when the assessment is made as a result of:

    a. "Bodily injury" or "property damage" not excluded from coverage under **Section II – Exclusions**; or

    b. Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided such person:

        (1) Is elected by the members of a corporation or association of property owners; and

        (2) Serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

2. Regardless of the number of assessments, the limit of $1,000 is the most we will pay for loss arising out of:

    a. One accident, including continuous or repeated exposure to substantially the same general harmful condition; or

    b. A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

3. We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

## SECTION II – CONDITIONS

## A. Limit Of Liability

Our total liability under Coverage **E** for all damages resulting from any one "occurrence" will not be more than the Coverage **E** Limit Of Liability shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence".

Our total liability under Coverage **F** for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage **F** Limit Of Liability shown in the Declarations.

## B. Severability Of Insurance

This insurance applies separately to each "insured". This condition will not increase our limit of liability for any one "occurrence".

## C. Duties After "Occurrence"

In case of an "occurrence", you or another "insured" will perform the following duties that apply. We have no duty to provide coverage under this policy if your failure to comply with the following duties is prejudicial to us. You will help us by seeing that these duties are performed:

1. Give written notice to us or our agent as soon as is practical, which sets forth:

    a. The identity of the policy and the "named insured" shown in the Declarations;

    b. Reasonably available information on the time, place and circumstances of the "occurrence"; and

    c. Names and addresses of any claimants and witnesses;

2. Cooperate with us in the investigation, settlement or defense of any claim or suit;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

3. Promptly forward to us every notice, demand, summons or other process relating to the "occurrence";

4. At our request, help us:

    a. To make settlement;

    b. To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

    c. With the conduct of suits and attend hearings and trials; and

    d. To secure and give evidence and obtain the attendance of witnesses;

5. With respect to **C.** Damage To Property Of Others under Section II – Additional Coverages, submit to us within 60 days after the loss a sworn statement of loss and show the damaged property, if in an "insured's" control;

6. No "insured" shall, except at such "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury".

**D. Duties Of An Injured Person – Coverage F – Medical Payments To Others**

1. The injured person or someone acting for the injured person will:

    a. Give us written proof of claim, under oath if required, as soon as is practical; and

    b. Authorize us to obtain copies of medical reports and records.

2. The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

**E. Payment Of Claim – Coverage F – Medical Payments To Others**

Payment under this coverage is not an admission of liability by an "insured" or us.

**F. Suit Against Us**

1. No action can be brought against us unless there has been full compliance with all of the terms under this **Section II.**

2. No one will have the right to join us as a party to any action against an "insured".

3. Also, no action with respect to Coverage **E** can be brought against us until the obligation of such "insured" has been determined by final judgment or agreement signed by us.

4. No suit or action on Coverage **F** shall be sustainable in any court of law or equity unless commenced within two years following the date of accident.

**G. Bankruptcy Of An "Insured"**

Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

**H. Other Insurance**

This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

**I. Policy Period**

This policy applies only to "bodily injury" or "property damage" which occurs during the policy period.

**J. Concealment Or Fraud**

We do not provide coverage to an "insured" who, whether before or after a loss, has:

1. Intentionally concealed or misrepresented any material fact or circumstance;

2. Engaged in fraudulent conduct; or

3. Made false statements;

    relating to this insurance.

## SECTIONS I AND II – CONDITIONS

**A. Policy Period and Changes.**

1. The effective time of this policy is the later of:

   a. 12:01 A.M. Standard Time at the "residence premises"; or

   b. At the time this policy was purchased

2. This policy may be renewed for successive policy periods if the required premium is paid and accepted by us on or before the expiration of the current policy period. The premium will be computed at our then current rate for coverage then offered.

3. Changes:

   a. Before the end of any policy period, we may offer to change the coverage provided in this policy. Payment of the premium billed by us for the next policy period will be your acceptance of our offer.

   b. This policy contains all agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us. If a change requires a premium adjustment, we will adjust the premium as of the effective date of the change.

**B. Liberalization Clause**

If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

This Liberalization Clause does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

1. A subsequent edition of this policy; or

2. An amendatory endorsement.

**C. Waiver Or Change Of Policy Provisions**

A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

The coverage provided and the premium charged are based on information you have given us. You agree to cooperate with us in determining if this information is correct and complete and to inform us of any change in title, use or occupancy of the "residence premises".

You agree that, if within 60 days of the policy effective date this information changes, is incorrect or incomplete, we may adjust your coverage and premium accordingly by giving you notice. This notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. The notice will contain the changed, incorrect or incomplete information along with the resulting premium change.

**D. Cancellation**

1. You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

2. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing will be sufficient proof of notice.

   a. When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

   b. When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 20 days before the date cancellation takes effect.

    **c.** We will also mail a copy of any notice of cancellation to any Additional Insured named in the Declarations.

    **d.** When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

        **(1)** If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

        **(2)** If the risk has changed substantially since the policy was issued.

    This can be done by letting you know at least 30 days before the date cancellation takes effect.

**3.** When this policy is canceled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

**4.** If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

**E. Nonrenewal**

We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

If we offer to renew and you or your representative do not accept, this policy will automatically terminate without notice of termination at the end of the current policy period. Failure to pay the required renewal premium when due shall mean that you have not accepted our offer.

**F. Assignment**

Assignment of this policy will not be valid unless we give our written consent.

**G. Subrogation**

An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us. Subrogation does not apply to Coverage **F** or Paragraph **C.** Damage To Property Of Others under **Section II – Additional Coverages**.

**H. Death**

If any person named in the Declarations or the spouse, if a resident of the same household, dies, the following apply:

**1.** We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death; and

**2.** "Insured" includes:

    **a.** An "insured" who is a member of your household at the time of your death, but only while a resident of the "residence premises"; and

    **b.** With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

## SPINNAKER INSURANCE COMPANY

In Witness Whereof, the Spinnaker Insurance Company has caused this policy to be signed by its Chief Executive Officer and Secretary at Chester, New Jersey, and countersigned on the declarations page by a duly Authorized Agent of the Company.

Nicholas Scott, Secretary

David Ingrey, Chief Executive Officer

SPNSIG01 (07/2017)



## NOTICE OF ADVERSE UNDERWRITING DECISION

**NAMED INSURED:** Fredrick Thomas

**POLICY NO.:** ▉▉▉ Insurance ▉▉▉

In connection with your application for homeowner's insurance or policy of homeowner's insurance, we have found it necessary to take the following action:

### Charge a Higher Rate

The reason(s) for this action are as follows:

☐ Unfortunately, the rate we assigned to your homeowners policy is not our lowest rate due to your current insurance score

We **did not give you our lowest rate** due, in part, to information from insurance score history reports from TransUnion when determining the appropriate rates to apply to your policy.

We obtained consumer report information from the CRA(s) shown below. Please note that the CRA did not make the premium, rating, or underwriting decision(s) and it is unable to provide you the specific reasons why the adverse action was taken. As provided under Section 612 of the Fair Credit Reporting Act, you are entitled to obtain a free copy of each of your consumer reports from the CRAs listed below within sixty (60) days of receiving this notice and you may dispute the accuracy or completeness of any information in the consumer report furnished by the CRA. You will need to contact the CRA directly to dispute the accuracy or completeness of any information included in your reports.

**TransUnion**
P.O. Box 2000
Chester, PA 19022
(800) 916-8800

You have the right to know the specific items of information that support the reason(s) given for this decision and the identity of the source of that information. You also have the right to see and obtain copies of any documents relating to this decision.

If you ask us to correct, amend or delete any information about you in our files and we decline to do so, you have the right to submit a concise statement to us of what you believe is the correct information. We will keep your statement in our file so that anyone reviewing your file will see it.

If you would like additional information concerning this action, please submit a written request within ninety (90) business days from the date this notice was provided to you. Please send your request by e-mail to hello@myhippo.com or regular mail to:

1

Hippo Insurance Underwriting
P.O. Box 390068
Mountain View, CA 94039

**THE SECTION BELOW CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**WATER BACK UP AND SUMP DISCHARGE OR OVERFLOW**

**A. Coverage**

We insure, up to the limit of liability shown in the Declaration for this coverage, for direct physical loss, not caused by the negligence of an "insured", to property covered under Section I caused by water, or waterborne material, which:

1. Backs up through sewers or drains; or

2. Overflows or is discharged from a:

   a. Sump, sump pump; or

   b. Related equipment;

   even if such overflow or discharge results from mechanical breakdown.  This coverage does not apply to direct physical loss of the sump pump, or related equipment, which is caused by mechanical breakdown.

This coverage does not increase the limits of liability for Coverages **A, B, C** or **D** stated in the Declarations.

**B. Section I- Perils Insured Against**

With respect to the coverage described in **A.** above, Paragraph: **A.2.c.(6)(b)** in Forms **HO003** and **HO006, 1.c.(5)(b)** in Form **H0015** and **H0615;**

is deleted and replaced by the following:

Latent defect, inherent vice or any quality in property that causes it to damage or destroy itself;

**C. Section I - Exclusions**

**A.3. Water Damage,** Paragraph **b.** is deleted and replaced by the following:

   b. Water, or water-borne material, which:

   (1) Backs up through sewers or drains; or

   (2) Overflows or is otherwise discharged from a sump, sump pump or related equipment;

   as a direct or indirect result of flood;

All other provisions of this policy apply.

**THE SECTION BELOW CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## WINDSTORM OR HAIL DEDUCTIBLE

### FORM HO3 ONLY

DEDUCTIBLE

With respect to the peril of Windstorm or Hail, we will only pay that part of the total of all loss payable under Section I that exceeds the windstorm or hail deductible.

No other deductible in the policy applies to loss caused by windstorm or hail.

All other provisions of this policy apply.

**THE SECTION BELOW CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ACTUAL CASH VALUE LOSS SETTLEMENT
## WINDSTORM OR HAIL LOSSES TO ROOF SURFACING

### Form H03 Only

**SECTION I - CONDITIONS**

This endorsement modifies the Section I - Loss Settlement Condition in the policy form with respect to a covered loss for roof surfacing caused by the peril of windstorm or hail. Such loss will be subject to "actual cash value" loss settlement. Therefore, the loss settlement conditions that pertain to "repair or replacement cost without deduction for depreciation" are changed as noted below:

**D. Loss Settlement**

1. Paragraph **1.c.** is deleted and replaced by the following:

   **1.c.** Structures that are not "buildings", including their roof surfacing; and

2. The following is added to Paragraph **1.**:

   **e.** Roof surfacing on structures that are "buildings" if a loss to the roof surfacing is caused by the peril of windstorm or hail.

3. In Paragraph **2.**, the introductory statement "Buildings" covered under Coverage **A** or **B** at "replacement cost" without deduction for depreciation subject to the following:" is deleted and replaced by the following:

   **2.** "Buildings" covered under Coverage **A** or **B**, except for their roof surfacing if the loss to the roof surfacing is caused by the peril of windstorm or hail, at "replacement cost" without deduction for depreciation, subject to the following:

All other provisions of this policy apply.

**THE SECTION BELOW CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## ADDITIONAL REPLACEMENT COST PROTECTION

### SPECIFIED AMOUNT

(Applies only when loss to dwelling exceeds the Coverage **A** Limit of Liability shown in the Declarations)

To the extent that coverage is provided, we agree to provide an additional amount of insurance in accordance with the following provisions:

**A.** If you have:

    **1.** Allowed us to adjust the Coverage **A** limit of liability and the premium in accordance with:

        **a.** The property evaluations we make; and

        **b.** Any increases in inflation; and

    **2.** Notified us, within 30 days of completion, of any improvements, alterations or additions to the "building" insured under Coverage **A** which increase the "replacement cost" of the "building" by 5% or more;

    the provisions of this endorsement will apply after a loss, provided you elect to repair or replace the damaged building.

**B.** If there is a loss to the "building" insured under Coverage **A** that exceeds the Coverage **A** Limit Of Liability shown in the Declarations, for the purpose of settling that loss only:

    **1.** We will provide an additional amount of insurance, up to the percentage of the Coverage **A** limit of liability described in the Declarations; and

    **2.** Section **I** – Condition **D. Loss Settlement** Paragraph **2.** is deleted and replaced by the following:

        **2.** "Buildings" under Coverage **A** and **B** at "replacement cost' without deduction for depreciation.  We will pay no more than the smallest of the following amounts for like construction and use on the same premises:

            **a.** The "replacement cost" of that part of the "building" damaged with material of like kind and quality and for like use;

            **b.** The necessary amount actually spent to repair or replace the damaged "building"; or

            **c.** The limit of liability under this policy that applies to the "building", increased in accordance with Paragraphs **B.1.** and **B.2.** of this endorsement.

        If the "building" is rebuilt at a new premises, the cost described in **a.** above is limited to the cost which would have been incurred if the "building" had been rebuilt at the original premises.

    **3.** We will pay no more than "actual cash value" of the damage until actual repair or replacement is complete.

    You may disregard the "replacement cost" loss settlement provisions and make claim under this policy for loss to the building on an "actual cash value" basis. You may then make claim for any additional liability on a "replacement cost" basis, provided you notify us of your intent to do so within 180 days after the date of loss.

All other provisions of this policy apply.

**THE SECTION BELOW CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## PERSONAL INJURY

### DEFINITIONS

The following definition is added:

"Personal injury" means injury arising out of one or more of the following offenses, but only if the offense was committed during the policy period:

1. False arrest, detention or imprisonment;

2. Malicious prosecution;

3. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

4. Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

5. Oral, written or electronic publication of material that violates a person's right of privacy.

### SECTION II - LIABILITY COVERAGES

The following is added to Coverage **E** - Personal Liability:

**Personal Injury Coverage**

If a claim is made or suit is brought against an "insured" for damages resulting from an offense, defined under "personal injury", to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the offense has been exhausted by payment of a judgment or settlement.

Damages, as used above, does not include actions for equitable relief or injunctive relief unless such action arises out of physical injury to some person to which Coverage **E** applies, or out of property damage to which Coverage **E** applies.

### SECTION II - EXCLUSIONS

With respect to the coverage provided by this endorsement, **SECTION II - EXCLUSIONS** is deleted and replaced by the following:

This insurance does not apply to:

1. "Personal injury":

   a. Caused by or at the direction of an "insured" with the knowledge that the act would violate the rights of another and would inflict "personal injury";

   b. Arising out of oral, written or electronic publication of material, if done by or at the direction of an "insured" with knowledge of its falsity;

   c. Arising out of oral, written or electronic publication of material whose first publication took place before the beginning of the policy period;

   d. Arising out of a criminal act committed by or at the direction of an "insured";

   e. Arising out of liability assumed by an "insured" under any contract or agreement except any indemnity obligation assumed by an "insured" under a written contract directly relating to the ownership, maintenance or use of the premises;

f. Sustained by any person as a result of an offense directly or indirectly related to the employment of this person by an "insured";

g. Arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured". This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business";

   This exclusion does not apply to:

   (1) The rental or holding for rental of an "insured location";

       (a) On an occasional basis if used only as a residence;

       (b) In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

       (c) In part, as an office, school, studio or private garage; and

   (2) An "insured" under the age of 21, years involved in a part-time or occasional, self-employed "business" with no employees.

h. Arising out of civic or public activities performed for pay by an "insured";

i. To you or an "insured" as defined under Definition **9.a.** or **b.**

   This exclusion also applies to any claim made or suit brought against you or any "insured":

   (1) To repay; or

   (2) Share damages with;

   another person who may be obligated to pay damages because of "personal injury" to an "insured"; or

j. Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants, at any time.

   Any loss, cost or expense arising out of any:

   (1) Request, demand or order that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants; or

   (2) Claim or suit by or on behalf of governmental authority for damages because of testing for, monitoring, clean up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

       Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

## SECTION II - ADDITIONAL COVERAGES

With respect to the coverage provided by this endorsement, paragraph **D.** Loss Assessment is deleted and replaced by the following:

**D. Loss Assessment.**

We will pay up to $1,000 for your share of loss assessment charged against you as an owner of the "residence premises", during the policy period by a corporation or association of property owners, when the assessment is made as a result of "personal injury" not excluded under this endorsement.

We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

Regardless of the number of assessments, the limit of $1,000 is the most we will pay for loss arising out of "personal injury".

## SECTION II - CONDITIONS

With respect to the coverage provided by this endorsement, Conditions **A.** Limits of Liability, **B.** Severability of Insurance and **C.** Duties After "Occurrence", are deleted and replaced by the following

### A. Limit of Liability

Our total liability under "Personal Injury" coverage for all damages resulting from any one offense will not be more than the limit of liability shown in the Declarations for Coverage **E** - Personal Liability. This limit is the same regardless of the number of "insureds", claims made or suits brought.

### B. Severability of Insurance

This insurance applies separately to each "insured". This condition will not increase our limit of liability for any one offense.

### C. Duties After Offense

In the event of loss from a covered offense, you or another "insured" will perform the following duties that apply. We have no duty to provide coverage under this policy if your failure to comply with the following duties is prejudicial to us. You will help us by seeing that these duties are performed.

1. Give written notice to us or our agent as soon as is practical, which sets forth:

   a. The identity of the policy and named "insured";

   b. Reasonably available information on the time, place and circumstances of the offense; and

   c. Names and addresses of any claimants and witnesses;

2. Cooperate with us in the investigation, settlement or defense of any claim or suit;

3. Promptly forward to us every notice, demand, summons or other process relating to the offense;

4. At our request, help us:

   a. To make settlement;

   b. To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

   c. With the conduct of suits and attend hearings and trials; and

   d. To secure and give evidence and obtain the attendance of witnesses;

5. No "insured" shall, except at such "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "personal injury."

All other provisions of this policy apply.

**THE SECTION BELOW CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## SMART HOME REWARDS PROGRAM - OHIO

If one or more of our Smart Home Rewards Programs apply to you, you will be eligible to receive benefits specific to that program.  The benefits enhance the safety, value, usability, life, or protection of you or your insurable assets.  These benefits include but are not limited to devices, equipment, services, benefits, or reward points, or other rewards provided either by us or a business partner.

All other policy terms and conditions apply.

 

November 14, 2022

Frederick Thomas
c/o Jason Liss
33450 West Twelve Mile Road
Farmington Hills, MI 48331

Via ordinary and certified mail
And via e-mail to:     thomasf.ft96@gmail.com
                       jliss@fabiansklar.com
         cc:           rroby@crmlaws.com

         RE:    Claim No.:    HOM-0001545
                Date of Loss: January 27, 2022

Dear Mr. Thomas:

        We have investigated the circumstances surrounding the above-referenced claim and reviewed all available documentation and factual information associated with this matter. Based upon our investigation, the terms and conditions of your Homeowners Policy No. ▮▮Insurance▮▮-00 ("the policy"), and applicable law, we have concluded that we are unable to afford coverage in connection with this claim.

        In pertinent part, the policy provides:

        **R.     Concealment or Fraud**

                1.   With respect to loss caused by fire, we do not provide coverage to the "insured" who has:

                        a.   Intentionally concealed or misrepresented any material fact or circumstance;

                        b.   Engaged in fraudulent conduct; or

                        c.   Made false statements;

                relating to this insurance.

(Policy at HO003, p. 23).

        It is evident that, throughout your presentation of this claim, you have misrepresented material information and/or made false statements with respect to your actions and whereabouts on the date of loss. Specifically, you advised Hippo that you were at your residence on the date of loss until leaving for your mother's home around 4:30 to 5:00 P.M. At your May 25, 2022,




EXHIBIT

2

**hippo** 

examination under oath, you confirmed that you had been at your residence all day before leaving for your mother's home between 4:40 and 4:50 P.M., and further testified that you made no stops either on your way there or on your way back to your residence. You testified that you first learned of the fire while still at your mother's home and, as a result, left her home for your residence.

However, your mother testified at her July 6, 2022, examination under oath that, while she met with you on January 28, 2022 (the day after the date of loss), she had no recollection of seeing you in the week prior to that date. She further testified that she did not learn of the fire until seeing it on the evening news on January 28, 2022. In addition, analysis of your cellular-location data available on the date of the loss indicates that, at the time of and prior to the last location-data transmission available for that date (11:32 A.M.), you were present at various locations miles away from your home. At your October 14, 2022, examination under oath, you contradicted your previous testimony and testified you believed you had been to a gas station on the date of loss.

Based upon the foregoing, we are writing to advise that coverage for your claim is being denied. This denial is not exclusive of any other policy provisions, exclusions and/or defenses which may be available to Hippo with regard to this claim, and Hippo expressly reserves the right to enforce and/or assert any and all policy provisions, exclusions, and/or defenses. None of the statements in this correspondence and/or any other previous correspondence should be construed as a waiver of rights of Hippo under the policy.

Please note that if there is any additional information which may affect this coverage decision, Hippo is willing to re-open your claim file for re-evaluation upon its receipt of that information.

Should you have any additional questions or concerns, please do not hesitate to contact me.

Very truly yours,

*B Lanier*

Becky Lanier
855-999-9746 ext 7157
BLanier@hippo.com
Hippo Insurance Services